# Case No. 18,246.
## CHARGE TO GRAND JURY.
[5 Blatchf. 558.] [1]

Circuit Court, D. Connecticut. Nov. 12, 1867.

VIOLATION OF NATIONAL BANKING LAWS—FRAUD AND EMBEZZLEMENT BY BANK OFFICERS AND DIRECTORS—NECESSITY FOR PUNISHMENT—DUTY OF GRAND JURY.

SHIPMAN, District Judge (charging grand jury). You are assembled, in pursuance of law, to enquire into the truth of any charges that may be submitted to you against individuals, for crimes committed in this district, or on the high seas, in violation of acts of congress. You are aware that the courts of the United States have no common law jurisdiction. They can punish no offences except such as are prohibited by some specific acts of the national legislature. These are comparatively few in number. The great body of offences against society pertain exclusively to the jurisdiction of the state courts, and can be punished by them alone. You are also aware, that no man can be put on trial before a federal

[1] [Reprinted by permission.]

court, until he has first been indicted by a grand jury. The law is different in the tribunals of our own state. There, in all cases when the punishment is neither death nor imprisonment for life, the state attorney can file his information and bring the offenders directly to trial. But, in this court, before any trial can be had, a grand jury of the district must present the accusation, and upon that accusation all the subsequent proceedings are founded.

It will be your duty, at the present term of this court, to investigate charges against several alleged offenders. The district attorney will see that you are supplied with such evidence as can be obtained, and he will prepare and furnish you with bills covering the offences that you may find proved by the requisite evidence. In order to find a true bill against any person, the proof should be such as, in your judgment, would warrant a petit jury in pronouncing the accused guilty. You proceed upon the evidence furnished you by the government, leaving the alleged offender to meet the charge, before the petit jury, by such proof as he may command. Sixteen of your number should always be present whenever you are engaged in the work before you, and twelve at least must concur in order to find a true bill.

It is not my purpose, at the present time, to dwell upon many of the particular crimes with which you may have to deal, but there is one class to which I invite your particular attention. By the fifty-fifth section of the act approved June 3, 1864 (13 Stat. 116), entitled, "An act to provide a national currency secured by pledge of United States bonds, and to provide for the circulation and redemption thereof," it is provided, "that every president, director, cashier, teller, clerk or agent of any association, who shall embezzle, abstract, or wilfully misapply any of the moneys, funds, or credits of the association, or shall, without authority from the directors, issue or put in circulation any of the notes of the association, or shall, without such authority, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or shall make any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association, or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by imprisonment not less than five nor more than ten years." It is hardly necessary to remark, that the word "association," in the section, refers to what are commonly termed "national banks." Now, I am informed, gentlemen, that in two instances, at least, officers of such banks, located in this district, and organized under the provisions of this statute, have committed one or more of the offences prohibited by the section which I have read. It will be your duty, therefore, to inquire into the facts, and, if you ascertain that such crimes have been committed, and who are the guilty parties, to present indictments against them. To this end the district attorney will see that you are supplied with such evidence as can be obtained. He will cause the necessary witnesses to be summoned, and the books that may throw light on your inquiries to be produced before you. You will have the statute before you, and will carefully discriminate between embezzlement and false entries, and mere loose transactions done under the express or implied authority of the directors. Let your investigation be thorough and complete, and if, after full inquiry and deliberation, you find, upon adequate proof, that any person has, within this district, committed any offence of the character specified in

this statute, you will find a bill against him. The faithful execution of this law is of the utmost importance. The business of banking has, in a great measure, been withdrawn from the oversight and supervision of the local state authorities, and these duties have been committed to officers far removed from the communities which are most interested in the safe and prudent management of these institutions. It is, therefore, of great moment that the provisions of the law enacted for the protection of the stockholders and the public should be strictly enforced.

It is not my habit to indulge in lengthy addresses to grand juries, but I feel constrained to say, that offences of this character are alarmingly frequent in this country, and the omission to bring the offenders to justice is followed by the worst consequences. Vast interests are committed to the hands of officers of banks. They occupy places of trust and confidence, conferred upon them for their intelligence and supposed integrity. They are men of good social standing, are raised, by their salaries, above want, and are removed from many of the temptations which assail those in the obscurer and humbler walks of life. To fail to punish them when they deliberately violate their trusts and plunder those who have relied on their integrity, while, at the same time, the more ignorant and degraded offenders against law are visited with its penalties, shocks the moral sense, and is a bitter mockery of justice. It renders property insecure, encourages fraud, and removes those wholesome checks which should guard and warn others from treading in the path of crime. The position of the active officers of a bank, who are daily employed in conducting its affairs, is one of peculiar responsibility. They are not only entrusted with the property of the opulent, who are able to bear losses, and who have usually a potent voice in selecting these officers, but they control the interests of the small stockholders, of widows and orphans, whose sole means of support are often the small savings of a life of industry and self-denial, carefully invested by those who have passed away, as a security against want, for friends who have shared their affections and been dependent on their care. No more delicate or sacred earthly trusts than these can be committed to men. And yet they are often shamefully violated, and the public and the victims are told that the high position of the culprits, their attractive and manly qualities, their past unblemished reputation, or their eminent piety, or all combined, are such, that those who have the earliest and freest access to the evidence of guilt do not desire their punishment, and cannot find it in their hearts to aid in bringing them to justice. If the moral sense of those most immediately interested in the management of these institutions is reduced to this sickly condition, it is quite time that a law was enacted declaring every officer, director, or stockholder of a bank who has knowledge that a fraud has been committed upon it, and fails to make immediate complaint to the officers of the law, an accessory after the fact, punishable by fine and imprisonment. If the miserable vendor of counterfeit currency passes a spurious note at a bank, and is detected, he is at once handed over to the officers of the law. If the bolder robber seizes a package of bills from its counter or messenger, he is immediately arrested, if possible, and brought to justice. Shall it be said that an officer of a bank, who commits, with coolness and deliberation, a long series of crimes, the smallest of which is more flagrant than counterfeiting or ordinary theft, may, when he can no longer pursue his guilty vocation with secrecy and success, assemble his partial friends, make his confession and apology, and then leisurely depart with none to hinder or molest him? Are laws made only for the comparatively weak, ignorant, and help-

less? Is the whole force of society, operating through the expensive machinery of criminal justice, to be expended upon its obscure and worthless members, while the more conspicuous ones are screened from punishment and treated as mere victims of misfortune, entitled to sympathizing regrets and to every facility for concealment and flight? The practical answer which the community shall give to these questions, concerns every citizen. Courts and marshals and sheriffs are not omnipresent, and their efficiency in detecting and punishing crime must always, and in a great degree, depend upon the temper and conduct of the community whose laws they are appointed to execute. If those who are more immediately affected by unlawful acts, and who necessarily are the first to discover them, are to remain silent and connive at the escape of the perpetrators, it will soon be difficult to punish any except the friendless. If high social position, or reputation for moral worth in the offender, is to shield him from prosecution, and release the members of the community from all obligation to uphold the enforcement of the law, courts of justice will soon be powerless to punish for any crime where a breach of trust is involved. For, only the respectable and the intelligent are honored with great pecuniary trusts. It is to such men that the vast and varied interests of corporations are committed, and to exempt them from all penalties for embezzlement, is to license the crime, without even the poor return of a revenue derived from those who practise it. It is to proclaim to the thousands of young men who are now employed in these institutions, that they can appropriate the money of others without fear of any worse consequences than the loss of their places, and perhaps a short voluntary exile from the state or country. So demoralizing has the sentiment of the community on this subject become, that offenders of the more respectable class begin to demand, as a right, exemption from punishment. Not long since, a man of education and prominence, notoriously guilty of repeated and extensive forgeries, while temporarily confined, or, rather, lodged in the jail in this county, had the effrontery to denounce every one of his victims who hesitated to unite with him in suppressing the evidence of his guilt. He finally overcame all their scruples, and is now engaged in enlightening other communities on their moral duties, and enjoying the patronage and favor of society. But mark the contrast. About the same time, in the same city, an obscure, uneducated day laborer forged a single small check, presented it at the bank, was detected, and was speedily consigned to the state prison at Wethersfield for a term of years. Nothing but a sense of duty has constrained me to state these humiliating facts, and, were they the only ones of the kind which have occurred in this community, I might still have remained silent.

The punishment of men for crime is always a painful duty, but, to every right-minded person, one of the saddest features of this duty comes, when the heavy hand of the law must be laid on the outcasts of society who have grown up in vice and ignorance, whereby they have been deprived of many of those restraining motives, the power of which, persons of intelligence and social repute are supposed to feel. If we look at the palliating suggestions which are so often offered to excuse men of former good name who violate the law, we see upon what delusive notions they rest. When such men are guilty of embezzlement and forgery, it is often said that they did not intend to injure any one. They appropriated the money, or simulated the signature, of another, with no design to ultimately defraud, but with the full purpose of restoring the funds, or meeting the note when due. Their failure to do so is attributed to the result of unfortunate speculations, and the turpitude of their offences is softened down by the excuse that they were not animated by a pur-

pose to injure others. This mode of reasoning would palliate nearly every crime against property. The burglar and the thief are not often prompted by malice or a desire to injure others. Their ruling motive is to supply themselves. They are willing that others should lose if they can gain. Those who embezzle with the hope to restore, or forge with intent to protect the paper, are willing that others should bear the risk of loss, and, if the worst comes, actual loss, provided they can enrich themselves. The essence of the crime, in both classes, consists in a lawless disregard of the rights of others, but it is greatly aggravated where the offence involves a breach of trust as well as a breach of law. I am justified in dwelling on this subject, by the magnitude of the evil; for, more money is lost to the rightful owner, and more families are ruined, by embezzlement and forgery, than by all other forms of private robbery. These crimes plough the furrows of sorrow deep in the hearts of innocent relatives, and plant the seeds of misery which death alone can eradicate. When committed on a large scale, they are usually the work of men who occupy at the time places of responsibility and trust, and who are too often shielded from punishment by the leniency of the public or the connivance and partiality of friends. This evil is rapidly increasing in every direction where men are employed to handle the money of others, and we see the fruits of this indulgent public sentiment in the plunder of the revenue of the government, in the repeated sale of official connivance and favor, in crippled or broken corporations, in families reduced from affluence to poverty, in relatives plunged into grief and shame, and in the boldness and impunity with which pecuniary fraud is so often perpetrated. With the increase of wealth, and especially with the eagerness of our people to speedily become rich, and their growing fondness for extravagance and display, this evil will rot away every security against commercial dishonesty and infuse its poison through the whole frame of society, unless the community adopt a higher standard of judgment and action, in dealing with those who forfeit their integrity in places of trust. The man who takes the money of another by indictable fraud must be treated the same as the one who takes it by force. The man who robs a bank from behind the counter must stand upon the same level with the one who does it in front. At all events, the fact that, by a false pretence of honesty, he has obtained the confidence of others only to betray them, should not entitle him to occupy higher and safer ground than ordinary offenders. I am aware that there are deeper themes of inquiry which belong to this subject—the feverish and artificial state which has characterized the finances and the business of the country, engendering aversion to the slow processes of regular industry; and habits of speculation which border on gambling, and are as barren of substantial and permanent benefits as the practice of that vice; and the hot haste for riches, generating a moral atmosphere in which the solid virtues of moderation, sobriety and probity often yield and melt away. But the discussion of these is no part of my judicial duty.

You will retire to your room, gentlemen, and first dispose of the current business which the district-attorney may lay before you. You will then proceed to investigate the frauds upon the two banks to which I have referred, and submit the result to the court. You will take all the time necessary to perform this work thoroughly. The court will be kept open until your labors are completed. As I have already remarked, if you ascertain that any of the crimes enumerated in the act to which I have called your attention have been committed within this district, and find out who the guilty parties are, you will present bills against them. Whether or not they have fled beyond the limits of this

district, or out of the country, will make no difference in your action. If you should find that any offender has compromised with those he has defrauded, this fact will not deter you from indicting him. Compounding crimes is not yet a bar to their prosecution. If any person refuses to testify to facts within his knowledge, or to produce books or papers within his reach, you will notify the court. If any one shall corruptly, or by threats, attempt to influence or impede any witness in the discharge of his duty, and if it shall come to your knowledge, you will find a statute applicable to his case. Act March 2, 1831 (4 Stat. 488, § 2). The district-attorney will provide you with a copy of the acts, and the marshal will furnish you with a room, and such conveniences as you may require.